UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN HENRY SAULSBERRY, | Civil No. 12-1069 (JRT/FLN) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE |
| SAINT MARY'S UNIVERSITY OF MINNESOTA, | |
| Defendant. | |

John H. Saulsberry, 4821 Columbus Avenue South, Minneapolis, MN 55417, *pro se*.

Robert L. McCollum and Cheryl A. Hood Langel, **MCCOLLUM CROWLEY MOSCHET MILLER & LAAK, LTD**, 7900 Xerxes Avenue South, Suite 700, Minneapolis, MN 55431, for defendant.

Plaintiff John Saulsberry challenges the termination of his employment by Defendant Saint Mary's University of Minnesota ("Saint Mary's"), bringing claims for defamation, age discrimination, racial discrimination, and retaliation. The matter is before the Court on the motion by Saint Mary's for summary judgment. On September 24, 2013, United States Magistrate Judge Franklin L. Noel issued a Report and Recommendation ("R&R") recommending that the Court grant the motion for summary judgment. Saulsberry made timely objections to the R&R, asserting that summary judgment should be denied on his defamation, racial discrimination, and retaliation

claims.[1]  Having conducted a *de novo* review of those portions of the R&R to which Saulsberry objects, *see* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2(b), and having carefully reviewed the submitted materials, the Court overrules Saulsberry's objections and adopts the R&R because it finds that there are no genuine disputes of material fact and Saint Mary's is entitled to judgment as a matter of law on all claims raised by Saulsberry.

## BACKGROUND

Saulsberry's position as Director of Security was eliminated and Saulsberry's employment at Saint Mary's was terminated when Saint Mary's outsourced its campus security needs to a private company.  (Aff. of Ann Merchlewitz , Ex. 8, May 3, 2013, Docket No. 20.)  Saulsberry's claims arise out of his belief that (1) Saint Mary's investigated complaints that were made against him, as a black employee, more rigorously than complaints lodged against white employees, and (2) the decision of Saint Mary's to outsource its security needs was a retaliatory response to Saulsberry's complaints about this alleged discrimination.  (Pl.'s Mem. in Resp. to Mot. for Summ. J. at 1, June 10, 2013, Docket No. 29; Objection to R&R at 3–4, Oct. 9, 2013, Docket No. 33.)

**I.     SAULSBERRY'S EMPLOYMENT AT SAINT MARY'S**

---

[1] Plaintiff does not object to the recommendation that his age discrimination claim was unfounded.  As to this issue, the Court adopts the Report and Recommendation without further discussion.

Saulsberry began working at the Twin Cities campus of Saint Mary's in 1995. (Compl. ¶ 11, May 1, 2012, Docket No. 1.) From 1996 to November 7, 2011, Saulsberry served as Director of Security. (*Id.*; Pl.'s Mem. in Resp. to Mot. for Summ. J. at 4.) During the year leading up to the events in question, Saulsberry's responsibilities included assigning shifts to security guards, patrolling campus grounds, providing escorts, conducting safety orientations, training personnel, responding to emergencies, ensuring functioning alarm systems, documenting security incidents, and advising Saint Mary's administrators on security issues. (Aff. of Robert L. McCollum, Ex. 2 (Dep. of John Saulsberry ("Saulsberry Dep.") 57:4–18), May 3, 2012, Docket No. 21.) The job description for Saulsberry's position also included "arrang[ing] for outside security service when required." (*Id.* at 50:10–54:14, 135:22–136:1.) Saulsberry testified that arrangements for outside security were required when there was a staffing shortage or a special event. (*Id.* at 55:21–25.) But, Saulsberry could not recall a time that it was necessary to arrange for additional security staff for any reason between 2009 and 2011. (*Id.* at 56:1–12.)

## II. INVESTIGATION OF COMPLAINTS MADE AGAINST SAULSBERRY

Between 2009 and 2011, employees managed by Saulsberry filed several formal complaints against Saulsberry. (Merchlewitz Aff., Exs. 1–5.) The complaints involved both Saulsberry's scheduling of work hours and alleged unprofessional treatment of the employees he managed. (*Id.*) The 2009 complaints were resolved with a written warning instructing Saulsberry to treat his staff with respect. (*Id.*, Ex. 1.) Saint Mary's

- 3 -

investigated complaints made in 2010 and provided Saulsberry feedback about employee scheduling concerns, but no finding was made regarding the complaints. (McCollum Aff., Ex. 1 at 11–12.)

In June 2011, two security employees, Corey Walthers and William Oatis, made complaints regarding Saulsberry's management to Saulsberry's supervisor and the university's Department of Human Resources. (Merchlewitz Aff., Ex. 3 at 9) Corey Walthers asserted that Saulsberry promised but did not provide him part-time employment instead of on-call employment, that Saulsberry swore at him and "invaded his 'personal space,'" and that Saulsberry treated the security staff with disrespect. (*Id.*) William Oatis complained that his work hours were reduced and that Saulsberry yelled at him and called him "an 'idiot' and a 'liar'" when Oatis approached Saulsberry about the reduction. (*Id.*, Ex. 3 at 10.) Saint Mary's was unable to substantiate any of the allegations raised by Walthers or Oatis. (*Id.*, Ex. 3 at 9–10.) But, the investigation of these complaints did reveal that "nearly every campus security guard and some Twin Cities campus staff reported that [Saulsberry] treat[ed] them with disrespect and [was] unprofessional in [his] communication with them." (*Id.*, Ex. 3 at 11.) No disciplinary action was taken as a result of the investigation into Walthers' and Oatis's complaints, but Saint Mary's required that Saulsberry work with a human resources employee to improve his supervisory and leadership skills and that Saulsberry treat all employees with respect. (*Id.*, Ex. 3 at 5.)

Saulsberry alleges that during the investigation of the 2011 complaints, a Saint Mary's employee reported that Saulsberry stated he "could 'kill about half the

security staff' like Larry Hoover would," that Larry Hoover is a Chicago gangster, and that Saint Mary's published these statements in Saulsberry's employment record. (Pl.'s Mem. in Resp. to Mot. for Summ. J. at 21–23, Ex. 1 at 9; Compl. at 6.) Saulsberry denies making any statements about Larry Hoover. (Saulsberry Dep. 120:18–121:23.)

On July 18, 2011, Saulsberry filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding the investigation into the 2011 complaints. (Merchlewitz Aff., Ex. 6.) Saulsberry alleged that Saint Mary's "investigates complaints against Black employees differently than it investigates complaints made by Black employees against White employees." (*Id.*)

### III.   SAULSBERRY'S TERMINATION

In 2010, Saint Mary's entered into negotiations to purchase additional land near its Twin Cities campus. (Merchlewitz Aff. ¶ 4.) Saint Mary's finalized the land purchase on June 24, 2011. (*Id.*) The land exceeds an acre and a half in area and includes an event center and parking lots. (*Id.* ¶¶ 4–5.) Although Saint Mary's began considering outsourcing its security needs as early as 2009, the purchase of this additional property modified Saint Mary's security needs, which led to Saint Mary's ultimate decision to outsource its security services. (*Id.* ¶¶ 5, 15, Ex. 10; Aff. of Don Winger ¶ 3, May 3, 2013, Docket No. 17.)

Saint Mary's administrators initiated a bidding process for outsourcing the university's security needs between April and May of 2011. (Winger Aff. ¶¶ 8–9.) They met with four potential security vendors between July 18 and July 22, 2011. (*Id.* ¶ 10.)

Don Winger, Dean of Campus Security from December 2009 to March 2012, arranged these meetings and was unaware of Saulsberry's July 18, 2011 Charge of Discrimination when the meetings were scheduled. (*Id.* ¶¶ 2, 10–11.) Saulsberry was not involved in the decision to outsource the security department. (Saulsberry Dep. 54:11–13.)

On November 7, 2011, Saint Mary's informed Saulsberry that it was outsourcing its security needs and terminating his employment. (Merchlewitz Aff., Exs. 8, 10.) Saulsberry was informed that he and all the security staff were able to apply for employment with the private security vendor. (*Id.*, Ex. 10.) Saulsberry did not apply in a timely manner. (Saulsberry Dep. 43:11–15, 47:1–4.) Saulsberry filed a second Charge of Discrimination with the EEOC on December 28, 2011, alleging that his discharge was "in retaliation for opposing discrimination." (Merchlewitz Aff., Ex. 9.)

## ANALYSIS

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all

reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

## II.   DEFAMATION CLAIM

Saulsberry claims that he was defamed when the statement made by a Saint Mary's employee regarding Larry Hoover was recorded in his employment record during the course of the investigation into his alleged misconduct.  "To establish a defamation claim, a plaintiff must prove three elements: (1) the defamatory statement is 'communicated to someone other than the plaintiff,' (2) the statement is false, and (3) the statement 'tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community.'"  *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919–20 (Minn. 2009) (alterations in original) (quoting *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980)).  Saulsberry objects to the R&R's conclusion that he failed to make a prima facie showing of defamation under this standard.  (*See* R&R at 4–5, Sept. 24, 2013, Docket No. 32.)

Even if Saulsberry has made a prima facie showing of defamation, Saint Mary's is shielded from liability by a qualified privilege.  In order for a defamatory communication to be shielded by a qualified privilege, it "must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause."  *Stuempges*, 297 N.W.2d at 256–57 (internal quotation marks omitted).  "[T]he existence of a privilege results from the court's determination that statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be

defamatory." *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 889 (Minn. 1986). "Whether an occasion is a proper one upon which to recognize a privilege is a question of law for the court to determine." *Id.* "[S]tatements made in the course of an employer's investigation into employee misconduct are protected by the qualified privilege." *Bahr*, 766 N.W.2d at 923.

A plaintiff can only overcome a qualified privilege if he or she can demonstrate the defendant acted with actual malice. *Lewis*, 389 N.W.2d at 889. "Actual malice requires a showing that the defamatory statements are made from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Bahr*, 766 N.W.2d at 920 (internal alterations and quotation marks omitted). When a qualified privilege exists, to survive a motion for summary judgment, a plaintiff must present at least some evidence from which it might be inferred that the defendant knew the statement at issue was false and some evidence of ill feeling between the parties. *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1009–10 (8th Cir. 2012) (citing *Frankson v. Design Space Int'l*, 394 N.W.2d 140, 144 (Minn. 1986)).

Here, Saint Mary's is entitled to a qualified privilege and Saulsberry has not made any showing of actual malice sufficient to overcome this privilege. Undisputed facts in the record reflect that the statement that Saulsberry said he could kill staff like Larry Hoover was recorded in the course of Saint Mary's legitimate investigation into Saulsberry's alleged unprofessional and aggressive behavior towards other employees. Saulsberry has not presented evidence that Saint Mary's recorded the statement in his employment record knowing it to be false, nor has Saulsberry presented evidence that

Saint Mary's recorded the statement with ill will or improper motive. Therefore, Saint Mary's is entitled to summary judgment on Saulsberry's defamation claim.

### III.   DISCRIMINATION CLAIM

Saulsberry claims that Saint Mary's discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act by investigating complaints against him with more rigor than Saint Mary's investigated complaints against white employees. Saulsberry objects to the R&R's finding that he failed to show that he suffered an adverse employment action.  He argues that core responsibilities of his job description were removed after the allegedly discriminatory investigation in 2011.[2]  Specifically, he argues that he was not informed of the pending decision to outsource the security department or allowed to have input in that decision, amounting to an adverse employment action.

Because there is no direct evidence of discrimination in the record, Saulsberry's racial discrimination claim must be evaluated under the *McDonnell Douglas* burden shifting framework. *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009).  Under the *McDonnell Douglas* framework, the plaintiff first must demonstrate a prima facie case of discrimination.  *Id.*  If the plaintiff makes out a prima facie case, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for its action.  *Id.*  If the employer successfully demonstrates a non-

---

[2] To the extent that Saulsberry's objection addresses events occurring before the 2011 investigation, those events are not properly before the court.  The Court is limited to addressing matters raised as part of Saulsberry's EEOC charges of discrimination.  *See Cottrill v. MFA, Inc.*, 443 F.3d 629, 634–35 (8th Cir. 2006).

discriminatory reason, then the burden shifts back to the plaintiff to show that the employer's stated reason was a mere pretext for discrimination. *Id.*

In order to establish a prima facie case of racial discrimination, Saulsberry must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the job in question, (3) he suffered an adverse employment action, and (4) the facts permit an inference of discrimination. *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008). Saint Mary's concedes that Saulsberry is a member of a protected class and that he was qualified for his position. (Def.'s Mem. in Supp. of Mot. for Summ. J. at 22, May 3, 2013, Docket No. 16.) The parties dispute whether Saulsberry establishes a genuine issue of fact regarding the third and fourth element: whether he suffered an adverse employment action and whether the facts permit an inference of discrimination.

The Court finds that Saulsberry has not raised a genuine issue of material fact on either of these disputed elements. First, the record does not support a finding that Saulsberry suffered an adverse employment action in relation to the 2011 investigations into his conduct. "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). Minor changes in duties which do not cause a material disadvantage, even if unpalatable, do not amount to an adverse employment action. *Id.*

While Saulsberry's title did not change and he did not receive a cut in pay or benefits as result of the 2011 investigations, Saulsberry argues that he suffered an adverse employment action because core responsibilities of his job were removed. Saulsberry points to the fact that he was not involved in the decision to outsource Saint Mary's security needs. While there is some evidence in the record to support a conclusion that Saulsberry's job responsibilities included arranging for outside security personnel when necessary because of a staffing shortage or a special event, Saulsberry does not point to anything in the record to establish that deciding whether or not to outsource the entire security department, including his own position, was part of the responsibilities of his job.

Saulsberry also fails to point to a genuine dispute of material fact regarding the fourth element of his prima facie case. This element can be satisfied "in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). To raise an inference of discrimination based on different treatment of a similarly-situated white employee, Saulsberry must at least point to an employee "'involved in or accused of the same or similar conduct [that was] disciplined in different ways.'" *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009) (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851 (8th Cir. 2005)).

Saulsberry does not point to any similarly situated white employees who were disciplined in a different way after having complaints lodged against them by multiple employees, nor does he demonstrate biased comments by Saint Mary's administrators

responsible for investigating complaints lodged against employees. Therefore, the Court concludes that Saulsberry has not shown any circumstances that give rise to an inference of discrimination concerning the investigations into his alleged misconduct. *See id.* Saint Mary's is entitled to summary judgment on Saulsberry's discrimination claim.

## IV. RETALIATION CLAIM

Saulsberry also claims that Saint Mary's retaliated against him, in violation of Title VII, for reporting the University's allegedly discriminatory actions to the EEOC. The *McDonnell Douglas* burden-shifting framework also applies to this claim. *Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008). In his objections, Saulsberry asserts that outsourcing the entire security department because of the purchase of additional land was pretext for the real desire of Saint Mary's to terminate Saulsberry for "opposing discrimination." (Objection to R&R at 4–5.)

To establish a prima facie case of retaliation under Title VII, Saulsberry has the initial burden to show (1) that he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action. *Shanklin v. Fitzgerald*, 397 F.3d 596, 603 (8th Cir. 2005). To establish a causal connection, Saulsberry must prove that Saint Mary's desire to retaliate was the but for cause of his termination. *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

Even if Saulsberry has made a prima facie showing of retaliation, Saint Mary's points to undisputed facts in the record to demonstrate that it had a legitimate reason for outsourcing its security needs and terminating Saulsberry's employment, i.e., the purchase of additional property and expansion of its Twin Cities campus. Saulsberry points to no facts in the record to support his allegation that this stated reason for termination was pretextual. Therefore, no genuine issues of material fact exist and Saint Mary's is entitled to judgment as a matter of law.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** the Plaintiff's objections [Docket No. 33] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated September 24, 2013 [Docket No. 32]. Accordingly, **IT IS HEREBY ORDERED** that Saint Mary's University of Minnesota's Motion for Summary Judgment [Docket No. 14] is **GRANTED**, and all claims against it are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: December 12, 2013                     _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                     United States District Judge